IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAVID BONIELLA,            )
      Plaintiff,         )
                           )
v.                         )   Civil Action No. 07-1314
                           )
COMMISSIONER OF            )
SOCIAL SECURITY,           )
      Defendant.         )

MEMORANDUM AND ORDER

Mitchell, M.J.:

      Presently before the Court for disposition are cross motions for summary judgment. For the reasons set forth below, the defendant's motion will be granted and the plaintiff's motion will be denied. An appropriate Order and Judgment will be entered.

      On October 2, 2007, David Boniella, acting pro se, filed a complaint pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. §405(g) for review of the Commissioner's final determination disallowing his claim for Supplemental Security Income benefits under Sections 1614 and 1631 of the Act, as amended, 42 U.S.C. §1381 cf.

      A protective application for Supplemental Security Income Benefits was filed on May 27, 2005 (R.13). On August 22, 2005, benefits were denied (R.23-27). On October 3, 2005, the plaintiff requested a hearing (R.28-29) and pursuant to that request a hearing was held on March 29, 2007 (R.163-169). In a decision filed on May 10, 2007, an Administrative Law Judge denied benefits (R.10-18), and on June 6, 2007, the plaintiff requested reconsideration of that determination (R.9). On July 27, 2007, the Appeals Council affirmed the prior

determination (R.5-7). The instant complaint was filed on October 2, 2007, dismissed on February 27, 2008 for lack of service and remanded on March 13, 2009.

In reviewing an administrative determination of the Commissioner, the question before any court is whether there is substantial evidence in the agency record to support the findings of the Commissioner that the plaintiff failed to sustain his/her burden of demonstrating that he/she was disabled within the meaning of the Social Security Act. Richardson v. Perales, 402 U.S. 389 (1971); Adorno v. Shalala, 40 F.3d 43 (3d Cir. 1994).

It is provided in 42 U.S.C. Section 405(g) that:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive....

Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)." Richardson v. Perales, supra., at page 401; Plummer v. Apfel, 186 F.3d 422 (3d Cir. 1999).

The purpose of the Supplemental Security Income Program is to provide additional income to persons of limited resources who are aged, blind or disabled persons. 42 U.S.C. §1381; Chalmers v. Shalala, 23 F.3d 752 (3d Cir. 1994). To be eligible for such benefits, an individual's income must not exceed a certain established maximum and he/she must fulfill certain eligibility requirements.

As set forth in 20 C.F.R. § 416.905(a) disability is defined as:

> the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

>be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.
>
>In addition, a person will be considered disabled if he/she is
>
>(a) ... permanently and totally disabled as defined under a State plan approved under title XIV or XVI of the Social Security Act, as in effect for October 1972; (b) ... received aid under the State plan ... for the month of December 1973 and for at least one month prior to July 1973; and (c) ... continue[s] to be disabled as defined under the State plan.

20 C.F.R. § 416.907.

>A physical or mental impairment is defined in 20 C.F.R. §416.908 as an:
>
>impairment [which] result[s] from anatomical, physiological, or psychological abnormalities which [are demonstrated] by medically acceptable clinical and laboratory diagnostic techniques.
>
>For purposes of determining whether or not the plaintiff met the eligibility

requirements, certain evidence was considered by the Commissioner.

At the hearing held on March 29, 2007 (R.163-169), the plaintiff elected not to appear (R.165) and a vocational expert was called upon to testify (R.165-169). The witness concurred that the plaintiff was born on June 14, 1968 and had a college education (R.166-167). She classified the plaintiff's past work experience as sedentary computer related work (R.167). When asked to assume an individual of the plaintiff's age, education, and work history who was able to perform simple, routine, repetitive tasks at any exertional level, the witness testified that such a profile would prevent the plaintiff from performing his prior work (R.168), but that there was a large number of unskilled entry-level jobs such a person could perform (R.168).

In addition, certain other evidence was considered.

The plaintiff was treated at the University of Pittsburgh Medical Center at McKeesport on November 19, 2004 for atypical chest pain and anxiety. Motrin was prescribed (R.107-122).

The medical records of Dr. Ashok K. Jain for May 23, 2005 and the laboratory results from June 9, 2005 demonstrate an evaluation for fatigue. (R.123-129).

In a report of weekly psychological treatment rendered between March 30, 2005 and June 3, 2005, Katherine Shirley diagnosed a major depressive disorder and adult antisocial behavior. It was observed that the plaintiff did not have any impairment in daily functioning. Further treatment with a therapist specializing in social disorders was recommended. While it was reported that the plaintiff would have difficulty following instructions it was also concluded that he would respond appropriately in a work environment (R.135-141).

In a report of a psychological evaluation conducted between May 12, 2005 and June 22, 2005, Debra Sharp Molchan diagnosed severe clinical depression and a personality disorder. A treatment program was developed including development of social skills. The plaintiff refused to consider taking medication. It was concluded that the plaintiff could not work in a situation requiring interpersonal interactions since he demonstrated extreme isolation although the plaintiff's global assessment score indicated that he was in the "functioning pretty well" range.(R.130-134).

In a psychiatric review completed on August 11, 2005, the presence of an affective disorder with major depression, anxiety related disorder manifested by chest pain and a personality disorder was indicated. However, none of these disorders were reported as of sufficiently severity to meet the disability requirements of the Act, and specifically the listing

"C" requirements. The limitations were said to be mild to moderate. The latter being apparent in social functioning. It was concluded, "the claimant is able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from his impairment." (R.142-158).

On December 21, 2006, the Pennsylvania Department of Welfare concluded that the plaintiff was temporarily disabled from November 18, 2004 through June 18, 2007 due to major clinical depression (R.160-161).

In a report from Deborah Sharp Molchan of a March 15, 2007 evaluation, severe depression, borderline personality disorder and continued refusal to take medication were noted. (R.159).

> Based on the evidence presented, the Commissioner determined:
>
> I have assessed the claimant's impairments by the criteria of listed impairments 12.04, <u>Affective Disorders</u>, and 12.08, <u>Personality Disorders</u>, Appendix 1. The claimant has been treated since May 2005 by Debra Mochan, M.S. a licensed psychologist, who has provided summaries of her treatment ... but not treatment records. In those summaries, Ms. Molchan lists symptoms that appear to satisfy part A of listings 12.04 and 12.08. However, the claimant does not exhibit a marked or equivalent limitation in two (in fact, in any) of the four categories in part B of listings 12.04 and 12.08, which measure severity. I find that the claimant has a moderate restriction in his activities of daily living. He reports (Docket 9E) a fair range of daily activities, but ... is isolative. I find that the claimant has a moderate difficulty maintaining social functioning. He appears to have a very limited social life and to have concerns about his relationship with his parents, but during the relevant period the record does not show a serious incident with family, friends, or authority figures. In June 2005, Ms. Molchan notes the claimant's report that he was incarcerated for a brief period for photocopying currency and attempting to use it to purchase items, but the dates and duration of the incarceration are not given, and it appears to be an isolated incident. Ms. Molchan uses the word "extreme" in describing the claimant's isolation and interpersonal

interactions but does not document specific instances during the relevant period. The residual functional capacity adopted here specifies no more than occasional contact with coworkers and supervisors and no contact with the public in the workplace, which I find to be a sufficient accommodation in this area. I find that the claimant has moderate difficulty maintaining concentration, persistence, and pace. The claimant's impairments reasonably may be expected to limit him in this area but not to the point that he cannot perform the simple, low-stress tasks specified in the [residual physical capacity] adopted here. Ms. Molchan reports that the claimant has difficulty with boundaries and adhering to hour therapy sessions but also that he had followed through with contacts with agencies concerning housing and vocational rehabilitation. The record does not show repeated episodes of decompensation, each of extended duration... during the relevant period. In fact, there is no such incident, which attests to a lack of disabling severity. The record does not show that the claimant has been hospitalized or required emergency-room treatment for an exacerbation of his symptoms during the relevant period. The claimant told Ms. Mochan that he had never been hospitalized for a mental disorder but that he had had a "mental breakdown" in 1992, about nine years before the alleged onset of disability. These facts show also that the criteria of part C of listing 12.04 are not satisfied.

The claimant has the residual functional capacity to perform work at any exertional level that does [not] require: more than simple, routine, repetitious tasks, with one- or two-step instructions; or strict production quotas, defined as the requirement to produce a specified number of units of work in a specified period of time; or more than occasional contact with coworkers to supervisors; or any contact with the public...

He refuses to take medication, and no reasonable basis for the refusal has been offered. He declines to seek rehabilitation referral, again without a reasonable basis. I have given more weight to the expert opinion of the state agency, which concludes, as I do here that the claimant's mental impairments are severe but not disabling ...

I asked the vocational expert to consider an individual of the claimant's age, education, work experience, and residual functional capacity. The expert testified that such an individual would be able to work as a janitor or cleaner ... over two million jobs in the

> national economy; light exertion, 400,000 jobs in the national economy and a packer ... 60,000 jobs in the national economy; light exertion, 160,000 jobs in the national economy...
>
> Based on the testimony of the vocational expert, I conclude that, considering the claimant's age, education, work experience, and residual functional capacity, he is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of not disabled is therefore appropriate...(R.15-18).

A review of the record reveals that the plaintiff suffers from a serious mental impairment marked by a major depressive disorder and an antisocial personality disorder. The issue before the Administration was whether or not these disorders were of such severity as to render the plaintiff disabled. The psychiatric review completed on August 11, 2005, confirms these disorders but also sets forth that the disorders were not of sufficient severity to meet the "C" listings of the requirements (R.142-158).

Initially, it should be noted that in reviewing mental disorders, 29 C.F.R. Ch.111, Pt. 404, Subpt. P., App.1 section 12.00 provides that three analyses apply. First under the "A" criteria, the medical findings are evaluated. Second the "B" criteria impairment related functional limitations are considered and finally the additional criteria set forth in "C "are examined. In this regard we have examined Listings 12.04 (affective disorders), 12.06 (anxiety-related disorders) and 12.08 (personality disorders).

Listing 12.04 applies to affective disorders and requires a showing meeting the requirements of parts "A" and "B" or part "C". Part "A" requires a demonstration of a depressive syndrome with at least four of the following: anhedonia, appetite disturbance, sleep disturbance, psychomotor agitation or retardation, decreased energy, feeling of guilt or worthlessness, difficulty concentrating or thinking; thoughts of suicide or hallucinations, delusions or paranoid

thinking. And, the part "B" requirements of at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace or repeated episodes of extended periods of decompensation.  Finally, to satisfy the "C" requirement, a medically documented history of a chronic affective disorder of at least two years duration with repeated extensive episodes of decompensation or a residual disease process that had resulted in such marginal adjustments that any slight change in demands would result in further decompensation or a history of more than one year's inability to function outside a highly supportive living arrangement.

        Listing 12.06 concerns anxiety related disorders and requires that "A"it be the predominant disturbance which is medically documented with a demonstration of generalized persistent anxiety with at least three of the following four symptoms: motor tension, autonomic hyperactivity, apprehensive expectation or vigilance and scanning or a persistent irrational fear, or recurrent severe panic attacks or recurrent obsessions or compulsions or recurrent and intrusive recollections of a traumatic experience and "B" at least two of the following: marked restriction of activities of daily living, or marked difficulty maintaining social functioning or marked difficulties maintaining concentration, persistence or pace or repeated episodes of decompensation. Or "C" a complete inability to function outside one's home.

        Finally, Listing 12.08 relating to personality disorders requires the satisfaction of both "A" and "B" parts. Part "A" requires a demonstration of deeply ingrained maladaptive patterns of behavior associated with seclusive or autistic thinking, or pathologically inappropriate suspiciousness or hostility, or oddities of thought, perception, speech and behavior, or persistent

disturbances of mood or affect or pathological dependence, passivity or aggressivity or intense and unstable interpersonal relationships. The "B" criteria require a showing of at least two of the following: marked restriction in daily living activities; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation of extended duration.

As applied to the plaintiff there is no doubt that he suffers from some degree of mental limitation. However, the evidence demonstrates that he suffers no impairment in daily living functions (R.135-141); that he could engage in work which does not require interpersonal relations (R.130-134); that his limitations were moderate and not disabling (R.142-158), and finally, as the Administrative Law Judge concluded he could engage in employment at any physical level which requires no more than occasional contacts with other people and no public contact. (R.15). Under these circumstances, the vocational expert testified that there was a wide range of gainful activity in which the plaintiff could engage. (R.168). For this reason, the conclusion of the Commissioner is supported by substantial evidence.

Summary judgment is appropriate where there are no material factual issues in dispute and the movant is entitled to judgment as a matter of law. Biener v. Calio, 361 F.3d 206 (3d Cir.2004).  In the instant case there are no material issues of fact in dispute, and the findings of the Commissioner are supported by substantial evidence. For this reason, the defendant's motion for summary judgment will be granted;  he plaintiff's motion for summary judgment will be denied and that the decision of  the Commissioner will be affirmed.

An appropriate Order will be entered.

ORDER

AND NOW, this 24th day of August, 2009 for the reasons set forth in the foregoing Memorandum, the defendant's motion for summary judgment (Docket No.47) is granted, the plaintiff's motion for summary judgment (Docket No. 43) is denied and the decision of the Commissioner is affirmed.

s/ Robert C. Mitchell
United States Magistrate Judge